O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY L. ROBARGE,<br><br>    Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. SACV 14-1201 RNB<br><br>ORDER AFFIRMING DECISION OF<br>COMMISSIONER |

The sole disputed issue listed in the Joint Stipulation ("Jt Stip") is whether the Administrative Law Judge ("ALJ") made a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 2.) The Court now rules as follows with respect to that issue.[1]

An ALJ's assessment of pain severity and claimant credibility is entitled to

---

[1] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

"great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Here, plaintiff alleged that she was disabled because of fibromyalgia, arthritis, back and neck problems, obesity, hypertension, an abnormal liver test, and an anxiety/panic disorder. (See AR 27, 58, 81.) During the administrative hearing, she testified about her limitations, employment history, and daily activities as follows. Her impairments require her to change positions, make it difficult to be around people, and preclude her from standing or sitting for prolonged periods. (See AR 55, 57-58, 60, 62.) Her latest job, as a travel clerk for Marriott, ended when the company moved to Florida, but she thought that the company had been planning to let her go in any event. (See AR 57; see also AR 471.) On a typical day, plaintiff wakes up, walks in the backyard, makes "little" meals with her father, sits and talks with a neighbor, attends Bible study for about half an hour, and visits with her daughter. (See AR 63-64.)

In addition to providing testimony at the administrative hearing, plaintiff completed a written Function Report describing her activities and limitations. (See AR 161-76.) In pertinent part, plaintiff stated that she has good and bad days; and that she can drive her parents to the doctor, cook once or twice per week, do some chores, go out approximately three times per week, and shop twice per month for 20

minutes at a time. (See AR 161-64.)

The ALJ determined that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms for the relevant period, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely credible" to the extent they were inconsistent with the ALJ's assessment of plaintiff's residual functional capacity. (See AR 38.) In support of this adverse credibility determination, the ALJ proffered six reasons. (See AR 38-39.)

One of the reasons proffered by the ALJ was that evidence of plaintiff's documented capability in activities in daily living – her ability to complete household chores and personal care and her failure to report a need for help in maintaining the residence – rendered her allegations less than credible. (See AR 38.) However, the record reflects that plaintiff reported that she does only limited household chores, that on bad "fibromyalgia days" she stays in bed, and that she does sometimes need help or encouragement to complete her chores. (See AR 161, 163.) Accordingly, the Court finds that the ALJ's reliance on plaintiff's self-reported daily activities, when considered in their full context, did not give rise to a legally sufficient reason to reject plaintiff's subjective symptom testimony. See Reddick v. Chater, 157 F.3d 715, 722-23 and n.1 (9th Cir. 1998) (ALJ's adverse credibility determination premised on evidence of a claimant's daily activities must consider the full context of the activities, such as whether they were sporadic or punctuated with rest).

Another reason proffered by the ALJ was that plaintiff's reports of anxiety and panic attacks from being around people or commotion were inconsistent with evidence that her mental status examinations were normal when seen in emergency rooms at Huntington Beach Hospital, as well as evidence that she could drive to her father's home, visit with family, visit with a neighbor, attend church, and shop in stores. (See AR 38.) As an initial matter, the record does not reflect that plaintiff reported attending church, but rather reflects only that she reported attending bible

study at a private home next door to her neighbor's home. (See AR 64.) Moreover, evidence of plaintiff's emergency room visits, which were based on plaintiff's physical conditions, did not contain extensive mental status examinations. (See AR 346-468.) Further, the record reflects that plaintiff reported shopping only twice per month for 20 minutes at time. (See AR 164.) Accordingly, the Court finds that the ALJ's reliance on this limited evidence of plaintiff's responses to other people and commotion, when considered in its full context, did not give rise to a legally sufficient reason to reject plaintiff's subjective symptom testimony.

Another reason proffered by the ALJ was that plaintiff had two gaps in treatment: (1) from July 2011 to October 2011, plaintiff did not visit her treating rheumatologist; and (2) from May 2011 to November 2011, she did not seek treatment at Pathways Medical Group. (See AR 39.) Although the record does reflect these gaps in treatment, the Court nonetheless finds that the cited gaps, of three and six overlapping months, are too brief to give rise to a legally sufficient reason to reject plaintiff's subjective symptom testimony, especially since the record on the whole reflects that plaintiff generally obtained treatment on a regular basis. Cf. Donathan v. Astrue, 264 F. App'x 556, 558 (9th Cir. 2008) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (upholding adverse credibility determination in part where claimant alleging fibromyalgia had an 18-month treatment gap that was inadequately explained); see also Harris v. Commissioner of Social Sec. Admin., 2015 WL 1286165, at *1 (9th Cir. Mar. 23, 2015) (same where claimant had unexplained treatment gap of nearly two years).

Another reason proffered by the ALJ was that the record did not support plaintiff's allegations of disabling symptoms and that her complaints were significantly out of proportion to any positive findings. (See AR 38.) Specifically, the ALJ cited evidence that reflected the following: (1) although plaintiff was found to have numerous "trigger points" and decreased abduction in the shoulder, she had "normal motor function, normal/full motor strength (5/5) and normal gait and stance"

(see AR 275, 280, 303); (2) in August 2011, plaintiff's own treating neurologist found "no swelling, warmth, redness, no paravertebral spasms, negative straight leg raises in sitting/supine position and no atrophy or disorganization of motor function – which one would not expect given [plaintiff's] report of chronic back pain or weakness from a lack of use of her muscles" (see AR 303-05); (3) the consultative examiner found normal range of motion in the cervical/lumbar spines with "normal range of motion and negative straight leg raises – in contrast to plaintiff's complaints of chronic back and neck problems" (see AR 312-16); (4) plaintiff did not use an assistive device during the consultative examination, despite complaints of aches/pains in her feet, ankles, knees and hips (see AR 312); (5) examinations in October 2011 and on November 2 and 7, 2011 did not support plaintiff's complaints of severe pain, decreased functioning, and flare ups (see AR 319-23, 478-79, 488-91); (6) plaintiff denied myalgias, pain, edema, heat, stiffness, deformity, weakness, or limitations of motion when seen by her treating physician in June 2012 (see AR 549-50); and (7) plaintiff had no complaints of pain or physical limitations in the record after November 8, 2012.

The Court is mindful that one of plaintiff's medically determinable severe impairments is a "fibromyalgia-type syndrome," which the Ninth Circuit has stated is a "poorly-understood" disease which an ALJ may not disregard by "effectively requiring objective evidence for a disease that eludes such measurement." See Benecke v. Barnhart, 379 F.3d 587, 591, 594 (9th Cir. 2004) (citation, internal quotation marks, and brackets omitted). Here, however, the ALJ did not disregard plaintiff's allegation of fibromyalgia by effectively requiring objective evidence for the disease; rather, the ALJ accepted the evidence of plaintiff's fibromyalgia diagnosis and determined that it was a severe impairment. (See AR 27.) Moreover, the ALJ's acceptance of that diagnosis did not mean that he was then precluded from finding, as he did here, that the alleged severity of plaintiff's *symptoms* from fibromyalgia were significantly out of proportion with the medical record, among

other reasons. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (assuming that claimant's fibromyalgia was a severe impairment, the ALJ nonetheless could reject claimant's subjective pain testimony in part because it was not fully corroborated by the objective medical evidence); see also Blair-Bain v. Astrue, 356 F. App'x 85, 87 (9th Cir. 2009) (ALJ could properly reject plaintiff's allegations about her limitations from fibromyalgia in part due to lack of objective medical support); Haislip v. Astrue, 316 F. App'x 538, 539 (9th Cir. 2008) (same). Although plaintiff contends that her fibromyalgia symptoms "wax and wane" (see Jt Stip at 9), the Court notes that no physician opined that plaintiff was disabled because of fibromyalgia, that plaintiff engaged in substantial gainful activity with a diagnosis of fibromyalgia (see AR 55-59), and that plaintiff has not proffered evidence that her symptoms clearly "waxed" or worsened after her employment ended. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (ALJ's rejection of allegation of disabling back impairment upheld where no physician opined that claimant's back rendered him disabled); see also Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (claimant's part-time work as personal caregiver belied claimant's claim of debilitating respiratory illness). The Court further notes that the ALJ's finding that plaintiff's alleged symptoms were significantly out of proportion with the medical record referred not only to her fibromyalgia, but also to other impairments, such as her back and neck problems.

The Court therefore finds that the inconsistency between plaintiff's subjective symptom testimony and the evidence of record cited by the ALJ was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See, e.g., Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ properly rejected claimant's testimony in part because it was inconsistent with medical evidence in the record); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical

evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support for the claimant's subjective complaints); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on lack of objective evidence to support claimant's subjective complaints).

Another reason proffered by the ALJ was that plaintiff's testimony that she "had put on a lot of weight over the last 10 years due to her inability to do things" was inconsistent with the record, which reflected "little fluctuation in her weight during that time period." (See AR 38.) The Court notes that plaintiff did not even address this reason in the Joint Stipulation. Moreover, the record does reflect that there was little fluctuation in plaintiff's weight during the 10 years prior to the hearing and that plaintiff was not only able to do things during that period, but she was able to engage in substantial gainful activity. (See, e.g., AR 55-59, 227-37.) Accordingly, the Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Bray, 554 F.3d at 1227 (upholding ALJ's adverse credibility determination in part where claimant's statements at the hearing did not "comport with objective evidence in her medical record"); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (same where claimant's testimony was belied by objective medical findings).

The other reason proffered by the ALJ was that the record reflected that plaintiff stopped working for reasons not related to her allegedly disabling impairments, but because her company relocated to Florida. (See AR 39; see also AR 57, 471.) Plaintiff's supposed belief that the company had been planning to let her go is speculative and in any event does not undermine the ALJ's finding that her employment as a travel clerk ceased because of the company's relocation, not because of a disability-based reason. Indeed, the record reflects that plaintiff sought comparable employment after the company relocated. (See AR 471.) Accordingly, the Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Bruton v.

1 | Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's
2 | credibility after finding that claimant stopped working because he had been laid off);
3 | see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (same where
4 | claimant stopped working because he had a large financial reserve); Harrelson v.
5 | Astrue, 273 F. App'x 632, 634 (9th Cir. 2008) (same where claimant stopped working
6 | because of religious reasons).

   In conclusion, the Court finds that even though the ALJ arguably erred in relying on three of his six stated reasons in support of his adverse credibility determination, the error was harmless because the ALJ's other three reasons and ultimate adverse credibility determination were supported by substantial evidence. See Carmickle v. Comm'r Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence).

                    *******************

   IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: May 28, 2015

                                        /s/ Robert N. Block
                                        ROBERT N. BLOCK
                                        UNITED STATES MAGISTRATE JUDGE